**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GROUND/WATER TREATMENT    *
& TECHNOLOGY, LLC,    *
   *
      Plaintiff,    *
   *    CIVIL ACTION NO.
     v.    *    1:20-CV-02654-ELR
   *
GEORGIA POWER COMPANY,    *
   *
      Defendant.    *

<u>**ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM**</u>

    Defendant Georgia Power Company ("Georgia Power") hereby files its: (1) Affirmative Defenses and Answer to the Amended Complaint (the "Complaint") of Plaintiff Ground/Water Treatment & Technology, LLC ("GWTT"); and (2) Counterclaim against GWTT, showing the Court as follows:

<u>**ANSWER**</u>

    Georgia Power responds to the enumerated allegations in the Complaint as follows:

**ANSWER TO INTRODUCTION**

    1.    Georgia Power generally denies the allegations contained in Paragraph 1 of the Complaint. Georgia Power specifically denies that it failed to

pay GWTT, breached the Contract, or is liable to GWTT under any theory, at law or in equity. Georgia Power admits that it entered into a contract with GWTT entitled "Lump Sum Agreement for Low Volume Wastewater Temporary Treatment System at Plant Bowen" with an effective date of May 24, 2018 ("the Contract"). Under the Contract, GWTT agreed to furnish all labor, supervision, materials, consumables, operating supplies, construction equipment, services and tools (except as specifically noted as furnished by Georgia Power) required for the Low Volume Wastewater Temporary Treatment System Project at Georgia Power's Plant Bowen (the "Project"). Georgia Power further admits that GWTT agreed to perform its services for a lump sum price of $5,875,000.00 (the "Contract Price"). Georgia Power denies GWTT's allegation that it is owed an outstanding "7.13 million [dollar] balance." Georgia Power denies that GWTT entitled to any additional compensation from Georgia Power related to the Project. Georgia Power denies any implication that GWTT adhered to the Contract's authorization requirements or that GWTT complied with the Contract's change order process. Georgia Power denies the remaining allegations contained in Paragraph 1 of the Complaint.

## ANSWER TO PARTIES, JURISDICTION AND VENUE

2.     Georgia Power lacks sufficient information upon which to base a response to the allegations contained in Paragraph 2 of the Complaint, and they are therefore denied. GWTT's Verified Notified of Citizenship of Its Members (Dkt. 10) speaks for itself and no further response is required.

3.     Georgia Power admits that Georgia Power Company is a corporation organized under the laws of the state of Georgia, with its principal place of business located at 241 Ralph McGill Boulevard NE, Bin #10180, Atlanta, Georgia, 30308-3374, and is a citizen of the state of Georgia and can be served with process by serving its registered agent at 241 Ralph McGill Boulevard NE, Bin #10180, Atlanta, GA, GA, 30308-3374. Georgia Power admits that Kevin Pearson was its registered agent at the time GWTT served its original Complaint. The remaining allegations contained in Paragraph 3 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power admits that the Court has personal jurisdiction over it.

4.     The allegations contained in Paragraph 4 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power admits that the Court has subject matter jurisdiction in this case.

5.     The allegations contained in Paragraph 5 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power admits that venue is proper.

## ANSWER TO FACTS

6.     Georgia Power admits the allegations contained in Paragraph 6 of the Complaint.

7.     Georgia Power admits the allegations contained in Paragraph 7 of the Complaint.

8.     Georgia Power admits the allegations contained in Paragraph 8 of the Complaint.

9.     Georgia Power admits the allegations contained in Paragraph 9 of the Complaint.

10.     Georgia Power admits the allegations contained in Paragraph 10 of the Complaint.

11.     Georgia Power admits that it issued a Limited Notice to Proceed on May 24, 2018. Georgia Power denies the remaining allegations contained in Paragraph 11 of the Complaint.

12.     Georgia Power admits that it made a payment of $450,000.00 in conjunction with the Limited Notice to Proceed. Georgia Power lacks sufficient

information upon which to base a response to the remaining allegations contained in Paragraph 12 of the Complaint, and they are therefore denied.

13.    Georgia Power admits the allegations contained in Paragraph 13 of the Complaint.

14.    Georgia Power admits that GWTT submitted a proposal dated July 6, 2018 which is included as part of Exhibit 8 to the Contract. Georgia Power denies the remaining allegations contained in Paragraph 14 of the Complaint.

15.    Georgia Power admits that a temporary wastewater treatment system was required to ensure regulatory compliance with the CCR rule and the existing discharge permit, while a permanent treatment system was to be constructed. Georgia Power denies the remaining allegations contained in Paragraph 15 of the Complaint.

16.    Georgia Power admits that it entered into a contract with GWTT entitled "Lump Sum Agreement for Low Volume Wastewater Temporary Treatment System at Plant Bowen Georgia Power Company" with an effective date of May 24, 2018. Georgia Power further admits that GWTT agreed to perform its services for a lump sum price of $5,875,000.00.

17.    Georgia Power denies GWTT's assertion that the Contract is "incorporated into [the] Amended Complaint by reference" since it is not attached

to the Complaint and has not been filed with the Court.

18.     Georgia Power admits that Luke Bohnenkamp was designated as Purchaser's Contract Administrator under the Contract.

19.     Georgia Power admits that under the Contract, Southern Company Services, Inc. ("SCS") was permitted to act as Georgia Power's agent in the administration of the Contract and, in so doing, had the powers of Georgia Power. Georgia Power denies the remaining allegations contained in Paragraph 19 of the Complaint.

20.     Georgia Power denies the allegations contained in Paragraph 20 of the Complaint.

21.     Georgia Power admits changes were made to the wastewater treatment system, as contemplated by the Contract. Georgia Power denies the remaining allegations contained in Paragraph 21 of the Complaint.

22.     Georgia Power admits that Robert Kunzel sent an email to Luke Bohnenkamp, Chad Mcknight and others with the subject line "Bowen Electrical." Georgia Power denies that GWTT's representation of that email is complete or accurate. The content of Mr. Kunzel's email speaks for itself and no further response is required.

23.     Georgia Power denies the allegations contained in Paragraph 23 of the

Complaint.

24.     Georgia Power denies the allegations contained in Paragraph 24 of the Complaint.

25.     Georgia Power denies the allegations contained in Paragraph 25 of the Complaint.

26.     Georgia Power lacks sufficient information upon which to base a response to the allegations contained in Paragraph 26 of the Complaint, and they are therefore denied.

27.     Georgia Power admits that Stephen Tappert sent an email to Gary Martin, Luke Bohnenkamp and others with the subject line "Schedule Discussion." Georgia Power denies that GWTT's representation of that email is complete or accurate. The content of Mr. Tappert's email speaks for itself and no further response is required.

28.     Georgia Power denies the allegations contained in Paragraph 28 of the Complaint.

29.     Georgia Power lacks sufficient information upon which to base a response to the allegations contained in Paragraph 29 and therefore denies the allegations.

30.     Georgia Power admits that GWTT submitted a description of two

proposed upgrades on November 8, 2018. Georgia Power denies that the November 8, 2018 correspondence constituted a Change Order. Georgia Power denies the remaining allegations contained in Paragraph 30 of the Complaint.

31. Georgia Power denies the allegations contained in Paragraph 31 of the Complaint.

32. Georgia Power denies the allegations contained in Paragraph 32 of the Complaint.

33. Georgia Power denies the allegations contained in Paragraph 33 of the Complaint.

34. Georgia Power admits that under the Contract, Purchaser's Contract Administrator "shall be responsible for administering this Agreement and for coordinating all activities relating to the performance of Work under this Agreement." Southern Company Services, Inc. ("SCS") was permitted to act as Georgia Power's agent in the administration of the Contract and, in so doing, had the powers of Georgia Power. Georgia Power denies the remaining allegations contained in Paragraph 34 of the Complaint.

35. Georgia Power denies the allegations contained in Paragraph 35 of the Complaint.

36. Georgia Power denies the allegations contained in Paragraph 36 of the

Complaint.

37.    Georgia Power denies the allegations contained in Paragraph 37 of the Complaint.

38.    Georgia Power denies the allegations contained in Paragraph 38 of the Complaint.

39.    Georgia Power denies that GWTT ever made a request for an extension of time pursuant to the Contract. Georgia Power denies the remaining allegations contained in Paragraph 39 of the Complaint.

40.    Georgia Power denies the allegations contained in Paragraph 40 of the Complaint.

41.    Georgia Power lacks sufficient information upon which to base a response to the allegations contained in Paragraph 41 of the Complaint and they are therefore denied.

42.    Georgia Power denies the allegations contained in Paragraph 42 of the Complaint.

43.    Georgia Power denies the allegations contained in Paragraph 43 of the Complaint.

44.    Georgia Power lacks sufficient information upon which to base a response to the allegations contained in Paragraph 44 of the Complaint and they

are therefore denied.

45.     Georgia Power admits that GWTT submitted numerous "change order requests." Georgia Power denies that GWTT's change order requests complied with the mandatory change order process and requirements set forth in the Contract. Georgia Power admits that it provided Field Work Authorizations for several of the change order requests, rejected several of the requests, and cancelled work related to several of the requests as it was permitted to do under the Contract. Georgia Power denies the remaining allegations contained in Paragraph 45 of the Complaint.

46.     Paragraph four (4) of the Contract speaks for itself and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 46 of the Complaint.

47.     Paragraph 32.6 of the General Conditions of the Contract speaks for itself and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 47 of the Complaint.

48.     The "change order requests" and "FWAs" referenced in Paragraph 48 of the Complaint speak for themselves and no response is required. To the extent a response is required, the allegations in Paragraph 48 of the Complaint are denied. Georgia Power denies the remaining allegations contained in Paragraph 48 of the

Complaint.

49.    The Field Work Authorization Forms attached as "Exhibit A" to the Complaint speak for themselves and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 49 of the Complaint.

50.    Georgia Power denies the allegations contained in Paragraph 50 of the Complaint.

51.    Georgia Power denies the allegations contained in Paragraph 51 of the Complaint.

52.    Paragraph 32.6 of the General Conditions of the Contract speaks for itself and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 52 of the Complaint. Georgia Power denies the remaining allegations contained in Paragraph 52 of the Complaint.

53.    Georgia Power denies the allegations contained in Paragraph 53 of the Complaint.

54.    Georgia Power admits that GWTT agreed to perform its services for a lump sum price of $5,875,000.00. Georgia Power denies the remaining allegations contained in Paragraph 54 of the Complaint.

55.    Georgia Power denies the allegations contained in Paragraph 55 of the Complaint.

56.    The "twenty-five change order requests" referenced in Paragraph 56 of the Complaint speak for themselves and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 56 of the Complaint. Georgia Power denies the remaining allegations contained in Paragraph 56 of the Complaint.

57.    The "Change Order Request Numbers 11 and 12" referenced in Paragraph 57 of the Complaint speak for themselves and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 57 of the Complaint. Georgia Power denies the remaining allegations contained in Paragraph 57 of the Complaint.

58.    Georgia Power denies the allegations contained in Paragraph 58 of the Complaint.

59.    The "twenty-five change order requests" referenced in Paragraph 59 of the Complaint speak for themselves and no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 59 of the Complaint. Georgia Power lacks sufficient information upon which to base a response as to why GWTT purportedly failed to include certain invoices in

the original documentation provided to Georgia Power and that allegation is therefore denied. Georgia Power denies the remaining allegations contained in Paragraph 59 of the Complaint.

60.    Georgia Power denies the allegations contained in Paragraph 60 of the Complaint.

61.    Georgia Power denies the allegations contained in Paragraph 61 of the Complaint.

62.    Georgia Power denies the allegations contained in Paragraph 62 of the Complaint.

63.    Georgia Power denies the allegations contained in Paragraph 63 of the Complaint.

64.    Georgia Power denies that it failed to pay GWTT, breached the Contract, or is liable to GWTT under any theory, at law or in equity. Georgia Power denies the remaining allegations contained in Paragraph 64 of the Complaint.

65.    Georgia Power denies that it failed to pay GWTT, breached the Contract, or is liable to GWTT under any theory, at law or in equity. Georgia Power denies the remaining allegations contained in Paragraph 65 of the Complaint.

66.    Georgia Power denies that it failed to pay GWTT, breached the Contract, or is liable to GWTT under any theory, at law or in equity. Georgia Power denies the remaining allegations contained in Paragraph 66 of the Complaint.

67.    Georgia Power denies the allegations contained in Paragraph 67 of the Complaint.

68.    Georgia Power admits that it retained Veolia. Georgia Power denies the allegations contained in Paragraph 68 of the Complaint.

69.    Georgia Power denies the allegations contained in Paragraph 69 of the Complaint.

## ANSWER TO COUNT ONE – BREACH OF WRITTEN CONTRACT

70.    Georgia Power realleges and incorporates herein its responses to the allegations contained in Paragraphs 1 through 69 of the Complaint.

71.    Georgia Power admits that it entered into a contract with GWTT entitled "Lump Sum Agreement for Low Volume Wastewater Temporary Treatment System at Plant Bowen Georgia Power Company" with an effective date of May 24, 2018.

72.    Paragraph four (4) of the Contract speaks for itself and no response is required. To the extent a response is required, Georgia Power denies the

allegations contained in Paragraph 72 of the Complaint.

73.    The "change order requests" referenced in Paragraph 73 of the Complaint speak for themselves and no response is required. To the extent a response is required, the allegations in Paragraph 73 of the Complaint are denied. Georgia Power denies the remaining allegations contained in Paragraph 73 of the Complaint.

74.    Georgia Power denies the allegations contained in Paragraph 74 of the Complaint.

75.    Georgia Power denies the allegations contained in Paragraph 75 of the Complaint.

76.    Georgia Power denies the allegations contained in Paragraph 76 of the Complaint.

77.    Georgia Power denies the allegations contained in Paragraph 77 of the Complaint.

78.    Georgia Power denies the allegations contained in Paragraph 78 of the Complaint.

79.    Georgia Power denies the allegations contained in Paragraph 79 of the Complaint.

80.    Georgia Power denies the allegations contained in Paragraph 80 of the

Complaint.

81.    Georgia Power denies the allegations contained in Paragraph 81 of the Complaint.

### ANSWER TO COUNT TWO – BREACH EXPRESS ORAL CONTRACT

82.    Georgia Power realleges and incorporates herein its responses to the allegations contained in Paragraphs 1 through 81 of the Complaint.

83.    Georgia Power denies the allegations contained in Paragraph 83 of the Complaint.

84.    Georgia Power denies the allegations contained in Paragraph 84 of the Complaint.

85.    Georgia Power denies the allegations contained in Paragraph 85 of the Complaint.

86.    Georgia Power denies the allegations contained in Paragraph 86 of the Complaint.

87.    The allegations contained in Paragraph 87 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 87 of the Complaint.

88.    The allegations contained in Paragraph 88 of the Complaint constitute

a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 88 of the Complaint.

## ANSWER TO COUNT THREE – QUANTUM MERUIT

89.    Georgia Power realleges and incorporates herein its responses to the allegations contained in Paragraphs 1 through 88 of the Complaint.

90.    Georgia Power denies that GWTT delivered a working System. Georgia Power admits that it is now in compliance with EPA rules and regulations.

91.    The allegations contained in Paragraph 91 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 91 of the Complaint.

92.    Georgia Power lacks sufficient information upon which to base a response to GWTT's "expectations" outside of the terms provided in the Contract and that allegation is therefore denied.   Georgia Power denies the remaining allegations contained in Paragraph 92 of the Complaint.

93.    The allegations contained in Paragraph 93 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 93 of the

Complaint.

## ANSWER TO COUNT FOUR – UNJUST ENRICHMENT

94.    Georgia Power realleges and incorporates herein its responses to the allegations contained in Paragraphs 1 through 93 of the Complaint.

95.    Georgia Power denies the allegations contained in Paragraph 95 of the Complaint.

96.    Georgia Power lacks sufficient information upon which to base a response to GWTT's "expectations" outside of the terms provided in the Contract and that allegation is therefore denied.   Georgia Power denies the remaining allegations contained in Paragraph 96 of the Complaint.

97.    Georgia Power denies the allegations contained in Paragraph 97 of the Complaint.

98.    Georgia Power denies the allegations contained in Paragraph 98 of the Complaint.

99.    The allegations contained in Paragraph 99 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 99 of the Complaint.

100.    The allegations contained in Paragraph 100 of the Complaint

constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 100 of the Complaint.

101.    Georgia Power denies the allegations contained in Paragraph 101 of the Complaint.

## ANSWER TO COUNT FIVE – ATTORNEY'S FEES AND EXPENSES OF LITIGATION

102.    Georgia Power realleges and incorporates herein its responses to the allegations contained in Paragraphs 1 through 101 of the Complaint.

103.    The allegations contained in Paragraph 103 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 103 of the Complaint.

104.    The allegations contained in Paragraph 104 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 104 of the Complaint.

105.    The allegations contained in Paragraph 105 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph

105 of the Complaint.

106.   Georgia Power denies the allegations contained in Paragraph 106 of the Complaint.

107.   Georgia Power lacks sufficient information upon which to base a response to the allegation contained in Paragraph 107 of the Complaint that GWTT is a "small contractor" or how GWTT would be paying for unspecified "invoiced work" and those allegations are therefore denied.   Georgia Power denies the remaining allegations contained in Paragraph 107 of the Complaint.

108.   The allegations contained in Paragraph 108 of the Complaint constitute a legal conclusion to which no response is required. To the extent a response is required, Georgia Power denies the allegations contained in Paragraph 108 of the Complaint.

## ANSWER TO PRAYER FOR RELIEF

Responding to the allegations contained in the Paragraph of the Complaint which begins "WHEREFORE" and constitutes GWTT's prayer for relief, including subparagraphs I through V, Georgia Power denies that GWTT is entitled to any relief from it under any theory, at law or in equity.

Except as expressly admitted, denied, or otherwise responded to, Georgia Power denies all of the allegations in the Complaint, including those asserted in the

non-enumerated headings and subheadings.

## AFFIRMATIVE AND OTHER DEFENSES

Without conceding the burden of proof as to any issue, Georgia Power asserts the following affirmative and other defenses to preserve its right to assert them at trial, to give GWTT notice of its intention to assert these defenses, and to avoid waiver of any defenses.

### FIRST DEFENSE

The Complaint fails to state a claim against GWTT upon which relief may be granted.

### SECOND DEFENSE

GWTT waived any right to damages or other relief against Georgia Power by failing to follow the procedures for providing notice of a potential claim and notice of a claim or dispute as set forth in the contract.

### THIRD DEFENSE

GWTT waived any right to damages or other relief against Georgia Power based on the waiver forms executed by GWTT throughout the course of the project.

### FOURTH DEFENSE

GWTT failed to follow the Contract authorization requirements and waived

its claims for changed or extra work.

FIFTH DEFENSE

GWTT's claims for breach of contract are barred because GWTT materially failed to perform as required under the contract.

SIXTH DEFENSE

Georgia Power did not breach any duty, in tort or in contract, allegedly owed to GWTT.

SEVENTH DEFENSE

GWTT's change order claims are based on a "total cost" or modified total cost measure of damages which are not permitted by the Contract. Even if such a measure of damages was permissible, GWTT has not satisfied the conditions necessary to the computation of such a claim.

EIGHTH DEFENSE

The "costs" claimed by GWTT are indirect costs, principle office expenses, financing costs and other costs which are not recoverable under the Contract.

NINTH DEFENSE

The "costs" claimed by GWTT are attributable to GWTT's failure to properly estimate the costs of the project  or mismanagement by GWTT during the procurement and installation process.

## TENTH DEFENSE

GWTT failed to observe the Contract's daily signed timesheet requirement and forfeited any entitlement to additional compensation or cost reimbursable payments for such work.

## ELEVENTH DEFENSE

GWTT misrepresented costs associated with the water system upgrade and Georgia Power detrimentally relied on those representations.

## TWELFTH DEFENSE

GWTT submitted false and exaggerated proposed change order requests.

## THIRTEENTH DEFENSE

GWTT waived its right to any delay-related costs or damages and never satisfied the Contract's time extension request requirements.

## FOURTEENTH DEFENSE

GWTT waived its right to any delay-related costs or damages and never satisfied the Contract's time extension request requirements.

## FIFTEENTH DEFENSE

GWTT's quantum meruit claim fails as a matter of law because there is an express contract governing all of the parties' rights and responsibilities.

## SIXTEENTH DEFENSE

GWTT's unjust enrichment claim fails as a matter of law because there is an express contract governing all of the parties' rights and responsibilities.

## SEVENTEENTH DEFENSE

GWTT's claims are barred in whole or in part by the statute of frauds.

## EIGHTEENTH DEFENSE

All of GWTT's alleged damages are offset by GWTT's defective work not remedied, damages to Georgia Power, failure to furnish drawings or other Close-Out Documentation required by the Contract, failure to meet the specifications or other requirements of the Contract, and material breach of the Contract.

## NINETEENTH DEFENSE

GWTT's claims are barred in whole or in part due to the absence of a General Contractor license, utility contractor license and engineering license.

## TWENTIETH DEFENSE

Georgia Power's alleged conduct did not proximately cause any purported injuries or damages suffered by GWTT.

## TWENTY-FIRST DEFENSE

To the extent GWTT has been harmed in any way, which Georgia Power denies, such harm was suffered as a result of GWTT's own actions, and its damages should be set off accordingly.

## TWENTY- SECOND DEFENSE

To the extent Georgia Power was bound to perform on any alleged promise, it was unable to do so by virtue of GWTT's bad acts, failure to perform, and misrepresentations. Moreover, any alleged failure to perform on the part of Georgia Power was waived by GWTT.

## TWENTY-THIRD DEFENSE

GWTT's claims are barred by its failure or refusal to perform conditions precedent.

## TWENTY-FOURTH DEFENSE

GWTT is not entitled to recover attorney's fees, costs, or expenses pursuant to O.C.G.A. §§ 13-1-11, 13-6-11 or any other applicable law under which such fees would be permitted.

## TWENTY-FIFTH DEFENSE

GWTT's claims are barred to the extent GWTT failed to mitigate or reasonably attempt to mitigate its alleged damages.

## TWENTY-SIXTH DEFENSE

To the extent as may be shown applicable by the evidence through discovery, Georgia Power asserts the affirmative defenses of estoppel, fraud, laches, payment, release, statute of frauds, statute of limitations, and waiver.

## TWENTY-SEVENTH DEFENSE

GWTT's claims are barred because of its failure to comply with the Contract's dispute resolution provision.

## TWENTY-EIGHTH DEFENSE

Georgia Power reserves the right to plead and prove such other defenses as may become known to it during the course of its investigation and discovery.

**WHEREFORE**, Georgia Power requests this Court:

a) dismiss the Complaint;

b) alternatively, grant judgment for Georgia Power and against GWTT   on the Complaint

c) tax all costs against GWTT; and

d) grant Georgia Power such additional relief as this Court deems just.

## COUNTERCLAIM

Defendant Georgia Power Company ("Georgia Power") hereby files its Counterclaim against Plaintiff Ground/Water Treatment & Technology, LLC ("GWTT") showing the Court as follows:

1.     Ground/Water Treatment & Technology, LLC ("GWTT") is a corporation organized under the laws of the state of Delaware with its principle place of business located at 627 Mt. Hope Road, Wharton, NJ 07885. Upon information and belief, none of GWTT's members are citizens of Georgia. GWTT may be served through its registered agent, National Registered Agents, Inc., located at 289 S. Culver Street, Lawrenceville, Georgia, 30046-4805.

2.     GWTT is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

3.     GWTT is subject to the venue of this Court under 28 U.S.C. § 1391.

### The Contract Obligations

4.     Georgia Power and GWTT entered into a contract entitled "Lump Sum Agreement for Low Volume Wastewater Temporary Treatment System at Plant Bowen Georgia Power Company" with an effective date of May 24, 2018 (the "Contract").

5.     Under the Contract, GWTT agreed to furnish all labor, supervision,

materials, consumables, operating supplies, construction equipment, services and tools (except as specifically noted as furnished by Georgia Power) required to design, build and operate the Low Volume Wastewater Temporary Treatment System Project at Georgia Power's Plant Bowen for a lump sum price of $5,875,000 (the "System" or the "Project").

6.    The Contract includes Exhibits numbered 1 through 8 all of which were incorporated and made part of the agreement between the parties and are defined as "the Contract Documents".  They are as follows:

> a.    Exhibit 1 Performance Specification;
>
> b.    Exhibit 2 Purchaser's (GPC's) Drawings;
>
> c.    Exhibit 3 Purchaser's General Conditions;
>
> d.    Exhibit 4 Purchaser's Special Conditions;
>
> e.    Exhibit 5 Vendor Document Submittal Schedule;
>
> f.    Exhibit 6 Purchaser's Compliance Documents;
>
> g.    Exhibit 7 Contractor and Subcontractor Waiver Documents; and
>
> h.    Exhibit 8 Contractor's Proposal.

7.    The Contract Documents are voluminous and are all in possession of GWTT.

8.    Exhibit 1 Performance Specification identifies the operating parameters for the System including a general layout with the types of equipment that would be required, the influent flow rates and water contents, the effluent quality requirements, other specific equipment and requirements, startup testing requirements and the completion date of March 1, 2019.

9.    Exhibit 3 the General Conditions is a 93-page documents specifying numerous Contract requirements.

10.    In Exhibit 3, section 7.8, GWTT was required to maintain updated design drawings and as a condition to final completion provide a complete set of updated design drawings in electronic and hardcopy format and an updated computer model of the system (the "As-Built Drawings").

11.    In Exhibit 3, section 26.4, the parties agreed that it would be difficult to definitively ascertain and prove the amount of Georgia Power's actual damages for any Project completion delays, and that the liquidated damages established in the Contract are calculated and agreed upon as a fair and equitable amount reasonably estimated in advance to cover Georgia Power's losses as a result of GWTT completion delays.

12.    In Exhibit 3, section 32.4(B)(6), GWTT was required to submit as a condition to final completion three duplicate sets of operating instruction and

maintenance recommendations (the "O&M Manuals").

13.    Exhibit 4 the Special Conditions is a 50-page document specifying other general requirements of the Contract including Milestone Completion dates and Schedule Liquidated Damages associated with GWTT failing to meet the Milestone dates.

14.    Exhibit 4 paragraph 5.2 contains the Milestone Dates by which GWTT was required to complete certain items of work.

5.2.    Milestone Dates:

| Description | Milestone Date |
|---|---|
| Milestone 1 - Provide:  Equipment List; General Arrangement Drawings (include mechanical/electrical tie points); Outline Dimensions; Bill of Material (including motors); Control Narrative; Piping and Instrumentation Diagrams, Electrical Load List* | September 14, 2018 |
| Milestone 2 - Provide Foundation Loads, Containment Requirements and Anchorage Requirements* | October 26, 2018 |
| Milestone 3 - Provide:  Instrumentation List; Termination Point Locations/Service List* | October 26, 2018 |
| Milestone 4 - Provide:  Wiring and Connection Drawings; One-Line Drawings; Termination Box Locations* | October 26, 2018 |
| Milestone 5 - Provide Estimated Equipment and Shipping Weights; Shipping, Receiving and Jobsite Handling & Storage Requirements* | October 26, 2018 |
| Milestone 6 – Provide: All Erection/Installation Drawings, Instruction Books (Erection, Installation, etc.), Equipment/Parts List* | October 26, 2018 |
| Milestone 7 - Receipt of All Equipment & Materials* | January 11, 2019 |
| Milestone 8 – Mechanical Completion/Start Up Test with Purchaser* | February 13, 2019 |
| Milestone 9 – Start Up Test Accepted by Purchaser* | February 27, 2019 |
| Milestone 10 - Ready for Operation/Start Up Test accepted by Purchaser (Performance Guarantee 1 & 2)* | March 1, 2019 |

*Liquidated Damages (attach to each day of delay in meeting these Milestones)

15.    Exhibit 4 paragraph 6.1 contains the Schedule Liquidated Damages which would be assessed against GWTT for failure to meet Milestone Dates.

6.1.    Schedule Liquidated Damages

Consistent with the requirements of the General Conditions, the Contractor shall be liable, in Liquidated Damages, for any Contractor Unexcused Delay in meeting a Key Milestone Date, and those Liquidated Damage rates for each day of Unexcused Delay are stipulated and agreed to as follows:

| Milestone Date | Days^ 1 –14 | Days^ 15 – 28 | Days^ 29 and over |
|---|---|---|---|
| Milestone 1 - Provide: Equipment List; General Arrangement Drawings (include mechanical/electrical tie points); Outline Dimensions; Bill of Material (including motors); Control Narrative; Piping and Instrumentation Diagrams, Electrical Load List* | $250 per day | $500 per day | $500 per day |
| Milestone 6 – Provide: All Erection/Installation Drawings, Instruction Books (Erection, Installation, etc.), Equipment/Parts List* | $250 per day | $1,000 per day | $2,500 per day |
| Milestone 7 - Receipt of All Equipment & Materials* | $1,000 per day | $2,000 per day | $5,000 per day |
| Milestone 8 – Mechanical Completion/Start Up Test with Purchaser* | $1,000 per day | $2,000 per day | $5,000 per day |
| Milestone 9 – Start Up Test Accepted by Purchaser* | $1,000 per day | $2,000 per day | $5,000 per day |
| Milestone 10 - Ready for Operation/Start Up Test accepted by Purchaser (Performance Guarantee 1 & 2)* | $1,000 per day | $2,000 per day | $5,000 per day |

Notwithstanding the above, the Contractor shall not be liable for Liquidated Damages for those number of days attributable to Purchaser delay.

16.    Exhibit 4 paragraph 6.2 contains the Performance Liquidated Damages which would be assessed against GWTT for failure to meet the

performance requirements of the Contract.

| Performance Guarantee | Hours * | Hours * | Hours |
|---|---|---|---|
| | 1 - 12 | 13 - 24 | Over 24 hours |
| Provide minimum treatment flow as in proposed system design (for Inlet Water within the limits for TSS and pH as noted in Table 4, Performance Specification, with the exception that TSS = 0 mg/L) | $1,000 (total) | $2,500 (total) | $2,500 + $3,000 each additional day |
| Operate within the Effluent Quality Requirements (Table 5, Performance Specification).** | $1,000 (total) | $2,500 (total) | $2,500 + $3,000 each additional day |
| Solids dewatered from treatment process shall pass paint filter test when provided to Purchaser for disposal, and be capable of meeting this requirement in a timely manner to be agreed upon by Purchaser and Contractor. | N/A | N/A | $2,500 + $3,000 each additional day |
| Freeze protection provided by Contractor shall be sufficient to allow system to operate in temperatures greater than or equal to 0 degrees Fahrenheit. | N/A | N/A | $2,500 + $3,000 each additional day |

\* Any time frame between these values will incur the full stated liquidated damage.
\*\* Performance LDs apply individually to each constituent.
\*\*\* Notwithstanding the above, the Contractor shall not be liable for Section 6.2 liquidated damages unless the Contractor operates the system in its entirety. The parties agree that if the Contractor provides technical supervision only, then the Contractor shall not be liable for Section 6.2 liquidated damages.

17.    Exhibit 7 contains the form of the Interim Waiver and Release Upon [Progress] Payment and Waiver and Release Upon Final Payment that were to be submitted by GWTT during the course of the Project.

18.    Exhibit 8 the GWTT Proposal is a 46-page document where GWTT responded to Georgia Power including certification that GWTT was properly licensed, and addressed the technical requirements of the General and Special Conditions and how it intended to design and build the System to meet all of specified operating parameters.

## Failure by GWTT to Perform Contract Obligations

19.    Georgia Power issued a Limited Notice to Proceed on June 4, 2018.

20.    GWTT failed to perform its Contract obligations as further detailed below.

21.    GWTT failed to complete all of the mechanical and electrical field work required by the Contract.  During the course of the performance of the Project work, GWTT announced that it would be unable to complete its obligations under the Contract and as a result, Georgia Power was forced to step in and have that work completed by other contractors.

22.    GWTT failed to meet the Milestone Completion dates established in the Contract.

23.    GWTT failed to demonstrate that the System met the performance requirements of the Contract.  Although at various times the effluent from the System did meet the specified effluent parameters, GWTT was not able

demonstrate operation of the System at the full design flow (12,000 gallons per hour) and meet the effluent parameters.

24.    GWTT failed to deliver the As-Built Drawings and the O&M Manuals as required under the Contract as a condition to achieving final completion of the Contract.

25.    Since the time when GWTT left the Project site, GPC has discovered other issues with the design and construction that demonstrate additional failures by GWTT in meeting their obligations under the Contract.

26.    GWTT failed to be properly licensed as required by the Contract.

27.    GWTT failed to specify the correct size and type of pumps installed as part of the System.

28.    GWTT failed to ensure that a number of the internal clarifier components installed by GWTT worked properly.  These components failed prematurely and had to be replaced by Georgia Power.

29.    GWTT failed to properly design the System to ensure the proper pH control of chemicals in the system.

30.    GWTT's failed to properly design the System which resulted in the need for Georgia Power to clean out system tanks with a projected frequency of 3 or 4 times per year.

31.    All conditions precedent, if any, to the filing and maintenance of this action and recovery of the relief sought herein by Georgia Power have occurred, been satisfied, met and fulfilled, or been waived.

## COUNT I

### Breach of Contract

32.    Georgia Power realleges and incorporates by reference Paragraphs 1 through 31 of its Counterclaim as if fully set forth herein.

33.    The Contract is a valid and enforceable agreement between the parties, under which GWTT was obligated to perform as described therein.

34.    All conditions precedent to the filing of this claim have occurred or have been waived.

35.    As set forth more fully in both the preceding paragraphs and below, GWTT repeatedly and materially breached the Contract.

36.    GWTT failed to timely complete work by the milestones stipulated under the Contract resulting in damages to Georgia Power the amount and extent of which are impracticable or impossible to ascertain, thereby entitling Georgia Power to liquidated damages pursuant to § 26.4 of the Contract Conditions.

37.    GWTT failed to achieve several of the Contract's guaranteed performance requirements while attempting to operate the system over a several

month period, thereby entitling Georgia Power to liquidated damages.

38.    GWTT failed to provide Close-Out Documentation, including but not limited to, As-Built drawings and O&M Manuals as required under the Contract.

39.    GWTT failed to comply with the Contract's requirements for requesting time extensions, failed to request and receive authorization for "extra" work, and failed to follow the Contract's change order processes and procedures.

40.    GWTT performed defective work and failed to remedy such defective work, including but not limited to failing to meet the guaranteed system flow rate which caused Georgia Power to incur significant costs and damages.

41.    GWTT committed numerous design errors, including ignoring the technical system requirements in the Contract specifications, as well as the operational conditions which GWTT identified in its own proposal, causing Georgia Power to incur significant costs and damages.

42.    GWTT failed to perform certain lighting work and piping heat trace work that was required under the Contract causing Georgia Power to incur significant costs and damages.

43.    GWTT failed to complete certain aspects of the mechanical and electrical field work required under the Contract causing Georgia Power to incur significant costs and damages.

44.    As a result of the Contract breaches set out herein, Georgia Power is entitled to recover all of its liquidated and actual damages described above.

45.    Georgia Power has paid GWTT all sums owed under the Contract but has withheld the final $1.1 million of the Contract price in order to offset, in part, the additional breach of contract damages sustained by Georgia Power.

46.    The breach of contract damages incurred by Georgia Power are much greater than the $1.1 million withheld from the final Contract payment.

47.    Under the terms of the Contract, Georgia Power is entitled to recover its legal fees and expenses, consultant and expert witness fees, and the costs of litigation, plus interest as provided by law.

## COUNT II

### Breach of Good Faith and Fair Dealing

48.    Georgia Power reincorporates Paragraphs 1 through 47 of its Counterclaim as if fully set forth herein.

49.    Because Georgia Power and GWTT were parties to the Contract, GWTT owed Georgia Power a duty of good faith and fair dealing.

50.    GWTT breached its duty of good faith and fair dealing by, among other things, intentionally failing to comply with timelines set forth in the Contract, failing to adhere to the Contract's authorization requirements, failing to comply

with the Contract's change order process/procedure, and failing to comply with the Contract's dispute resolution provision.

51.   By breaching the duty of good faith and fair dealing, Georgia Power has been injured and continues to incur damages.

52.   Accordingly, Georgia Power requests that this Court issue judgment in favor of it and award Georgia Power pre-judgment and post-judgment interest at the maximum legal rate.

## COUNT III

### Attorney's Fees

53.   By GWTT breaching the Contract and forcing Georgia Power to bring this Counterclaim, GWTT is liable to Georgia Power for its attorney's fees and expenses, the expense and fees associated with this litigation, and the costs of consultants or experts retained by Georgia Power pursuant to §§ 33.3.8 and 1.32 of the General Conditions of the Contract.

54.   GWTT has also acted in bad faith, been stubbornly litigious, and has subjected Georgia Power to unnecessary troubles and expense.

55.   GWTT, among other things, failed to comply with key milestones set forth in the Contract, failed satisfy the Contract's performance guarantees, failed to adhere to the Contract's authorization requirements, failed to comply with the

Contract's change order processes and procedures, and failed to comply with the Contract's dispute resolution provision.

56.    GWTT is liable to Georgia Power for its expenses of litigation, including reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE**, Georgia Power seeks a judgment against GWTT, for damages in an amount not less than $5,000,000 to be determined at trial for the following categories of damages:

a) Damages associated with Georgia power supplementing the work force and assuming responsibility for completing mechanical and electrical work that should have been completed by GWTT;

b) Schedule Liquidated Damages associated with failing to meet Contract Milestone dates;

c) Performance Liquidated Damages associated with failing to meet Contract required performance obligations;

d) Damages associated with the cost of As-Built Drawings and the O&M Manual.

e) Damages associated with correcting defective work including replacing pumps, clarifying components, pH control and cleaning out of the System.

f) Damages associated with breach of good faith and fair dealing damages;

g)  Interest as provided for in the Contract and by law;

h)  Attorneys' fees, expert and consultant fees, and litigation expenses; and

i)  Such other and further relief as this Court deems just and proper.

This 8th day of March, 2021.

/s/ Richard J. Valladares

Richard J. Valladares
Georgia Bar No. 611066
valladaresr@gtlaw.com
Ernest L. Greer
Georgia Bar No. 309180
greere@gtlaw.com
James Z. Foster
Georgia Bar No. 756038
fosterja@gtlaw.com

Attorneys for Defendant Georgia
Power Company

**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road, N. E.
Suite 2500
Atlanta, Georgia 30305
Telephone: 678-553-2100
Facsimile: 678-553-7382

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 8, 2021, I electronically filed the foregoing ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM with the CM/ECF e-filing system, which will automatically send email notification of such filing to attorneys of record.

This 8th day of March, 2021.

/s/ *Richard J. Valladares*
Richard J. Valladares
Georgia Bar No. 611066